FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2011 JAN 12  PM 4:44

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE, FLORIDA

DEVIN J. EDWARDS,

    Petitioner,

v.           Case No. 3:09-cv-575-J-20JRK

WALTER A. MCNEIL, etc.;
et al.,

    Respondents.

_____

## ORDER

### I. Status

Petitioner, an inmate of the Florida penal system, initiated this action by filing a pro se Petition (Doc. #1) for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and a Brief in Support (Doc. #2). He challenges his 2007 state court (Duval County) conviction for attempted murder in the first degree and kidnaping with a firearm on one ground: Petitioner's confession should have been suppressed because it was involuntary and obtained in violation of his rights against self incrimination and to due process of law guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

Respondents filed an Answer to Petition for Writ of Habeas Corpus (Doc. #16) (hereinafter Response). Petitioner has replied. See Petitioner's Reply Brief to Respondents' Answer to Petitioner's Writ for Habeas Corpus (Doc. #27). See Order (Doc. #6).[2]

## II. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

---

[2] The state court procedural history is set forth fully in the Response, and the Respondents concede that this action was timely filed. See Response at 2-5. Thus, this Court will not repeat the procedural history herein.

2

## III. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).
>
> As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:
>
>> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed *de novo*, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.
>
> Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's

3

>application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence."[3] 28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert. denied, 2010 WL 3392400, 79 USLW 3128 (U.S. Nov. 29, 2010) (No. 10-288).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005). Thus, to the extent that Petitioner's claim was adjudicated on the merits in the state courts,[4] it must be evaluated under § 2254(d).

---

[3] This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

[4] The Court's evaluation is limited to examining whether the highest state court's resolution of the claim is contrary to, or an unreasonable application of, clearly established law, as set forth by the United States Supreme Court. See Newland v. Hall, 527 F.3d 1162, 1199 (11th Cir. 2008), cert. denied, 129 S.Ct. 1336 (2009).

4

## IV. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner contends that his conviction was obtained in violation of the Fifth and Fourteenth Amendments to the United States Constitution because his statements were coerced by unlawful police tactics. Petition at 5. Petitioner raised this issue on direct appeal, see Ex.[5] I, and the First District Court of Appeal summarily affirmed the judgment of conviction without issuing a written opinion. Ex. K. The mandate issued on March 2, 2009. Ex. L. Thus, Respondents concede that this claim has been exhausted; however, they contend that it is without merit. Response at 6-32.

The following facts are pertinent in assessing the First District Court of Appeal's adjudication of this claim. Prior to trial, Petitioner filed a "Motion to Suppress Involuntary Statements Secured Through Law Enforcement Misconduct Including Intimidation, Manipulation, Coercion, Deception, and Implicit Promises" and a "Memorandum in Support of Defendant's Motion to Suppress Involuntary Statements Secured Through Law Enforcement Misconduct Including Intimidation, Manipulation, Coercion, Deception, and Implicit Promises." Ex. B. In the motion, Petitioner argued that the statements should be suppressed because Special Agent Charles King

---

[5] The Court hereinafter refers to the exhibits appended to Respondents' Appendix (Doc. #19) as "Ex."

5

and Officer J. G. Devevo employed an "unrelenting, unethical campaign to secure incriminatory admissions from Devin Edwards." Id. at 25. The motion referenced the officers' use of deception and false and deceitful information, threats to arrest Petitioner's mother, implicit promises of less time of incarceration, intimidation tactics suggesting that the officers could control whether or not Petitioner's mother would continue to receive her federal retirement benefits, and feigned expressions of empathy and concern for Petitioner and his well-being. The trial court held a hearing on the motion. Ex. C.

At the suppression hearing the judge heard testimony from Officer J. G. Devevo, Sgt. Stephen Zona, and Devin Edwards. Officer Devevo attested that he utilized an audio recording device during the interview. Id. at 227. Petitioner was advised of his constitutional rights. Id. 227-30. He signed and dated the rights form. Id. at 230.

Devevo attested that Petitioner did not appear to be intoxicated or under the influence of controlled substances or drugs. Id. at 231. Handcuffs were removed prior to the interview. Id. at 232. Initially, Petitioner denied involvement in the crime, but within a period of twenty minutes, he admitted some involvement in the crime. Id. at 234.

Agent King told Petitioner that if the crime were prosecuted federally, conspirators may be arrested, including Petitioner's

friend, Cyrus Sapp. Id. at 234-35. He advised Petitioner that it may include arresting his mother. Id. at 235. Petitioner responded that he would rather be prosecuted federally because there were better jails in the federal system. Id.

The interview lasted approximately one hour. Id. at 236. Petitioner never asked for questioning to stop, he never asked for an attorney, and he never said he did not want to talk anymore. Id. Devevo attested that they never threatened Petitioner and they never made promises to Petitioner in exchange for his statement. Id. After the interview, Petitioner signed the written statement prepared by Agent King. Id. at 237-38.

Petitioner was not free to leave during the interview. Id. at 240. He was being interviewed on the NAS base and was signed in at the gate of the military base.[6] Id. Petitioner asked to speak to his mother several times.[7] Id. at 241. His requests were denied. Id.

Officer Devevo did not consider a statement about giving Petitioner a break to be a promise. Id. at 244. He also did not consider a statement about doing right by Petitioner to constitute a promise. Id. Officer Devevo admitted that there were efforts made to de-victimize the victim, an interviewing technique used to

---

[6] The victim was Petty Officer Antwan Johnson of the United States Navy.

[7] Petitioner Edwards was not a minor in 2006, when the offense occurred.

7

get the suspect to speak more openly about the incident. <u>Id</u>. at 246. Agent King talked about Cyrus Sapp, the triangulation of cell phone records with GPS location monitoring, a palm print (a prop), and created fictitious witnesses or used exaggerated statements. <u>Id</u>. at 246-48.

Petitioner was not given a bathroom break during the interview, but he did not request one. <u>Id</u>. at 248-49. He requested a cigarette, but he was not provided with one. <u>Id</u>. at 248. He was not offered a beverage, nor did he request one. <u>Id</u>. at 248-49.

Sgt. Zona testified about an interview of Petitioner in 2001, which took place after his arrest for a carjacking. <u>Id</u>. at 250-51. He was interviewed at 1:59 a.m., after he had been in custody for several hours. <u>Id</u>. at 251. He was advised of his <u>Miranda</u>[<u>v.Arizona</u>, 384 U.S. 436 (1966)] rights. <u>Id</u>. at 252. He was not cuffed or shackled. <u>Id</u>. He did not appear to be under the influence of drugs or alcohol. <u>Id</u>. Petitioner confessed to participating in the carjacking. <u>Id</u>. at 254. The interview lasted about fifteen minutes. <u>Id</u>. Petitioner never asked for the questioning to stop, he did not ask for an attorney, and he never said he did not want to talk to anyone. <u>Id</u>. Sgt. Zona did not threaten Petitioner during the interview. <u>Id</u>. at 254-55. After the interview, Petitioner provided a written statement detailing his participation in the carjacking. <u>Id</u>. at 255.

On November 29, 2006, Devin Edwards testified that he was twenty-two years old. Id. at 259. He attested that his mother was retired from the military and receiving military benefits. Id. at 259-60. He requested to speak to his mother prior to the interview at NAS, but he was not allowed to speak with her. Id. at 261-62. He was given Miranda rights, but they were not explained to him. Id. at 262. The charges were explained to him. Id. He said that he was told by Agent King that if he cooperated, he would keep his mother and Cyrus Sapp from being charged with a crime. Id. at 264. He was also told that his mother's pension would remain safe. Id. Agent King wrote the statement after the interview and Petitioner initialed it. Id. at 264-65.

Petitioner testified that he understood that if he made a statement, the officers would leave Cyrus Sapp and his mother alone and they would keep him out of the federal system. Id. at 265. He also understood that if he made a statement, they would go "lighter" on him. Id.

Petitioner attested that he has a GED, and at the time of his arrest, he had a full-time job. Id. at 266. He stated he could read and write in English and had no mental health problems. Id. at 267. He said that he had plenty of sleep the night before the interview. Id. at 268. He was arrested in the late morning and was not tired. Id. He had not consumed alcohol or drugs. Id. at 268-69.

Petitioner gave the police permission to search the white car that he had been driving, which was his mother's car. Id. at 269. Petitioner attested that he was not scared or nervous during the interview. Id. at 272. He stated he was calm and he had been through all of this before. Id. He had been arrested for a carjacking in 2001, and had been arrested a half a dozen times as a juvenile. Id. He confirmed that each time he was arrested, he was given his rights. Id. at 273. He admitted that he had been arrested another four times as an adult between the carjacking and the instant case, and each time he had been read his Miranda rights. Id.

Petitioner was asked about the interview at NAS:

> Q  At first you talked about going to visit Cyrus at the apartment complex, couldn't get in, and you talked about the altercation at the front gate, right?
>
> A  Correct.
>
> Q  Now, when you gave them that first version of the events, had you been threatened to give that version of the events?
>
> A  Not at that time, no.
>
> Q  Had you been promised anything to give that first statement?
>
> A  No.
>
> . . . .
>
> Q  So Mr. Edwards, when you gave them the first version of the events in which you admitted to being at [the] apartment complex and actually tussling with the boy, but nothing

10

>       about a gun, you hadn't been threatened up to
>       that point?
>
> A    Not that I recall.
>
> Q    You hadn't been promised anything up to
>       that point?
>
> A    No.

Ex. C at 276-77.

The Petitioner went over the written statement and initialed each paragraph and signed it at the bottom. Id. at 281. The form included the following: "I make this statement of my own free will and without any threats made to me or promises extended." Id. at 282. Petitioner said he just was not showing that he was scared and nervous during the interview. Id. at 283-84.

The trial court was provided with the transcript of the deposition of Agent King and the original of the audiotape transcript and the audiotape itself. Id. at 285. Finally, an outline of the Petitioner's argument was provided to the court. Id. at 287.

The trial court denied the motion, stating in pertinent part the following:

> I agree with Ms. Ragsdale that the test is whether in the totality of the circumstances they are sufficient to indicate that the statement should be suppressed; however, I cannot agree with her that this totality of circumstances is such that it should be, and accordingly, the motion to suppress is denied.

Ex. C at 307.

Petitioner relies on the Fourteenth Amendment in his Petition. "The Due Process Clause of the Fourteenth Amendment provides that no State shall 'deprive any person of life, liberty, or property, without due process of law.'" Colorado v. Connelly, 479 U.S. 157, 163 (1986). Additionally, he references the Fifth Amendment: "[t]he Fifth Amendment prohibits the use of an involuntary confession against a defendant in a criminal trial." United States v. Thompson, 422 F.3d 1285, 1295 (11th Cir. 2005) (citations omitted). The Supreme Court of the United States has "merged or unified the Fourteenth Amendment due process voluntariness analysis with the Fifth Amendment voluntariness analysis." United States v. Mwangi, No. 1:09-CR-107-TWT, 2010 WL 520793, at *10 n.16 (N.D. Ga. Feb. 5, 2010). The voluntariness analysis should focus on whether the defendant was coerced by the police into making the statement. Id. at *9.

An independent assessment of the voluntariness of the confession must be made. Baldwin v. Johnson, 152 F.3d 1304, 1320 (11th Cir. 1998), cert. denied, 526 U.S. 1047 (1999). The Court must ask, under the totality of the circumstances, did the police wring a confession out of the confessor against his will or was the confession a result of voluntary choice. See Connelly, 479 U.S. at 520. In determining whether the confession was a product of coercion, the court must consider the totality of the surrounding circumstances. Land v. Allen, 573 F.3d 1211, 1216 (11th Cir. 2009)

12

(per curiam), cert. denied, 130 S.Ct. 2097 (2010). Physical force, exhausting and lengthy interrogations and promises which induce the confession have been found to be coercive conduct by the government. Mwangi, 2010 WL 520793, at *9. Even if veiled threats or promises are made, the mere presence of these elements is not enough if, under the totality of circumstances, the threats or promises did not overbear the defendant's will. See United States v. Vickers, No. 1:10cr137-MEF, 2010 WL 4975623, at *2 n.5 (M.D. Ala. Oct. 14, 2010).

The circumstances of the statements do not suggest coercion. There is no dispute that Miranda warnings were given prior to the interview being conducted. The interview was audio-taped and there were only two officers present. It was admitted that a certain amount of deception and trickery were employed by the police during the interview, noting the palm print that was simply a prop and statements made-up to encourage Petitioner to talk. However, "the police's use of a trick alone will not render a confession involuntary." United States v. Castaneda-Castaneda, 729 F.2d 1360, 1363 (11th Cir. 1984) (citation omitted), cert. denied, 469 U.S. 1219 (1985). There must be "other aggravating circumstances," like hours of questioning in a hostile environment of an uneducated and mentally unstable or vulnerable defendant. Id.

That was not the case here. The Court recognizes that factors to be considered are the defendant's intelligence, the length of detention, the nature of the interrogation, the use of physical

13

force and the use of any promises or inducements by the police. Here, Petitioner Edwards was an adult, he had a GED and a full-time job. He was clear of mind and free of substances which would interfere with his decision to confess to the crimes. He was given and was fully aware of his Miranda rights. There was testimony that he was very familiar with Miranda warnings and had previously confessed to a carjacking back in 2001, and was on probation at the time of the attempted murder and kidnaping. There was extensive testimony that the interview at NAS was brief, lasting only an hour, and took place during the daytime. Petitioner was well rested when he gave the statements. The length of detention prior to the statements was brief. No physical force was used against him and he was not handcuffed or shackled during the interview. Petitioner's appearance was calm and he was appropriately responsive to questioning.

Although the interview took place at NAS Jax instead of the Police Memorial Building, it was conducted in an interview room that was approximately eight by ten feet, there was a two-way mirror and a desk, a computer monitor and a couple of chairs. Ex. C at 261. There was nothing inherently terrifying or foreign in the interview room and there were only two government officers present. There was no attempt by the officers to create a threatening atmosphere in the NAS interrogation room or on the base. See Land, 573 F.3d at 1216. In sum, Petitioner's will was not overborne.

Although some deception and trickery were utilized by the police, Petitioner was not new to the criminal justice system. The use of a ruse "does not diminish the non-coercive nature of the interview." United States v. Grossman, 233 Fed. Appx. 963, 967 (11th Cir. 2007) (per curiam) (citation omitted). Indeed, the interview technique of de-victimizing the victim or suggesting that the victim started or was responsible for the conflict is not considered to be coercive police conduct which necessarily results in an involuntary confession. See Miller v. Dugger, 838 F.2d 1530, 1537 (11th Cir. 1988), cert. denied, 486 U.S. 1061 (1988).

Applying federal law, "the challenged statement was obtained in accordance with the Constitution." Land, 573 F.3d at 1217. Ultimately, however, the Court must "determine whether the state court's finding that [Petitioner's] statement was voluntary was contrary to, or an unreasonable application of, that law." Id. Any subsidiary and historical findings of fact made by the state court are presumed to be correct under the 2254(d) presumption. Even though, in the instant case, the state court failed to make explicit findings, "a state court's denial of the claim 'resolves all conflicts in testimony bearing on that claim against the criminal defendant.'" Baldwin, 152 F.3d at 1320 (citing Waldrop v. Jones, 77 F.3d 1308, 1316 (11th Cir. 1996)) (citation for internal quotation omitted).

As noted previously, Petitioner raised this claim on direct appeal, and the First District Court of Appeal affirmed without issuing a written opinion. Ex. K. Thus, there is a qualifying decision under AEDPA. The Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002). Upon a thorough review of the record and the applicable law, the First District Court of Appeal's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on this claim.

### V. Certificate of Appealability

If Petitioner appeals the denial of the Petition, the undersigned opines that a certificate of appealability is not warranted. See Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district

16

court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

17

3.  If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.  The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 12 day of January, 2011.

_____
UNITED STATES DISTRICT JUDGE

sa 1/5
c:
Devin J. Edwards
Ass't A.G. (Conley)